UNITED STATES of America, Appellee,

v.

Yaroslaw KOPELCIW, a/k/a Joe Copeland, Appellant.

UNITED STATES of America, Appellee,

v.

David O. ALDRICH, Appellant.

UNITED STATES of America, Appellee,

v.

Sam A. BITTNER, Appellant.

Nos. 86–1199, 86–1657 and 86–1887.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1987.

Decided April 10, 1987.

Rehearing Denied in Nos. 86–1199 and 86–1657 May 21, 1987.

Michael J. Poepsel, Omaha, Neb., for Kopelciw.

Donald W. Kleine, Omaha, Neb., for Aldrich.

John Stevens Berry, Lincoln, Neb., for Bittner.

Thomas D. Thalken, Asst. U.S. Atty., Omaha, Neb., for U.S.

Before ROSS, BOWMAN, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Sam A. Bittner appeals the district court's [1] order sentencing him to one year and one day's imprisonment for conspiracy to transport stolen goods, in violation of 18 U.S.C. § 371 (1982), and receiving stolen property knowing it was transported in interstate commerce, in violation of 18 U.S.C. §§ 2313, 2314 (1982). David O. Aldrich and Yaroslaw Kopelciw appeal the district court's orders sentencing them to six months' imprisonment for conspiracy to transport stolen goods, in violation of 18 U.S.C. § 371 (1982). For reversal, appellants argue that the district court erred in denying their motions to sever and for a continuance, and in sentencing Bittner. We affirm.

## I. BACKGROUND.

The American Smelting and Refining Company (ASARCO) operates a lead refinery plant in Omaha, Nebraska, which receives bullion shipped from smelters in El Paso, Texas, and Helena, Montana. The Omaha plant refines the bullion into pure lead, thereby producing a by-product known as "dore," which consists, in part, of gold and silver. Because the Omaha plant is not equipped to refine the dore, it is recast from its original form of "litharge tips" into 385 pound bars, and shipped to Amarillo, Texas, for refining.

From 1979 to February 1984, ASARCO experienced pilferage of dore from the Omaha plant. It was believed that employ-

---

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

ees were stealing the dore before it had been recast into bars and selling the litharge tips to scrap dealers in the Omaha vicinity.

Appellants Aldrich and Kopelciw were employees at the Omaha ASARCO plant, together with Jeffrey Soseman and Herbert Brink. Appellant Bittner was a scrap metal dealer who processed metals for resale to precious metal dealers, with the assistance of his employee, David Putnam.

On March 22, 1985, an indictment was filed in the district court for conspiracy, transportation of stolen goods and sale or receipt of stolen goods, against Aldrich, Kopelciw, Bittner, Soseman and Putnam. Both Soseman and Putnam entered guilty pleas before trial.

By April 2, 1985, the defendants had been arraigned, and trial was scheduled to commence on May 20, 1985. Thereafter, various defendants filed pretrial motions for severance and continuance. The trial was rescheduled for September 9, 1985, and later, at the request of the defense, was again rescheduled, for October 7, 1985.

Prior to selection of the jury, on October 7, 1985, Aldrich and Kopelciw again moved for a continuance, on account of the unavailability of a potential witness, Gordon Hoch. All three appellants also filed a renewed request for severance. The district court denied these motions, and the four-day trial commenced on October 7.

At trial, Soseman and Brink testified that they had stolen dore from the Omaha plant along with Aldrich and Kopelciw. Aldrich and Kopelciw would then sell the dore to "Sam." Additional evidence showed that Putnam assisted Sam Bittner in processing dore which was sold to Jack Wallace, a dealer in Des Moines, Iowa. The dore sold to Wallace, as well as some dore which Putnam pilfered and sold to Ed Hart, a former employee of Bittner, who had become an informant for the FBI and ASARCO, was identified as coming from the Omaha ASARCO plant.

The case was submitted to the jury on the afternoon of October 10, 1985. A verdict was returned the next day, finding Aldrich, Kopelciw and Bittner guilty of conspiracy to transport stolen property in interstate commerce, and also finding Bittner guilty of receiving and transporting stolen property in interstate commerce.

The district court sentenced both Aldrich and Kopelciw to two years' imprisonment, with all but six months suspended, followed by four years of probation. After receiving a sentencing report pursuant to 18 U.S.C. § 4205 (1982), the court sentenced Bittner to one year and one day's imprisonment for the conspiracy count, and concurrent terms of four and five years for the two substantive counts. The four- and five-year terms were suspended, however, leaving Bittner with a sentence of one year and one day. These appeals followed.

## II. DISCUSSION.

### A. Severance.

Aldrich, Kopelciw and Bittner contend that the district court erred in refusing to grant their motions for three separate trials. Aldrich and Kopelciw argue that the joint trial deprived them of the benefit of each other's exculpatory testimony, as a result of their fifth amendment rights against self-incrimination, and created a prejudicial association between them and Bittner, the alleged "kingpin" of the conspiracy. Bittner asserts that the joinder deprived him of exculpatory testimony by Aldrich and Kopelciw.

Rule 8(b) provides that two defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions." Fed.R. Crim.P. 8(b); see generally United States v. Lueth, 807 F.2d 719, 730 (8th Cir.1986). The district court may grant a motion for severance of defendants "[i]f it appears that a defendant * * * is prejudiced by a joinder." Fed.R.Crim.P. 14.

Whether to grant a motion for severance is a discretionary matter for the district court, see United States v. Starr, 584 F.2d 235, 238 (8th Cir.1978) (citing numerous authorities), cert. denied, 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979) and an error involving Rule 8(b) misjoinder requires reversal only if it resulted in "ac-

tual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.' " *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Lueth,* 807 F.2d at 730 n. 6. Although a defendant shoulders "a heavy burden" in showing that a denial of severance was reversible error, *see Starr,* 584 F.2d at 238, proof that a codefendant would have been likely to testify at a separate trial and the testimony would be exculpatory may be grounds for reversal. *Id.* at 239. Additionally, a denial of severance may be reversible error if the defendant shows actual prejudice because the jury could not reasonably have been expected to compartmentalize the evidence as it related to several defendants. *United States v. Mansaw,* 714 F.2d 785, 790–91 n. 5 (8th Cir.) (quoting *United States v. Knife,* 592 F.2d 472, 480 (8th Cir.1979)), *cert. denied,* 464 U.S. 964, 104 S.Ct. 403, 78 L.Ed.2d 343 and 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). A defendant is not entitled to severance merely because the evidence against a codefendant may be more damaging than the evidence against him, however. *Id.*

■ The district court properly exercised its discretion in refusing to grant separate trials in the present case. The charges in the indictment were clearly related to the same alleged series of transactions, making joinder appropriate under Rule 8(b). Prior to trial, the appellants failed to meet their burden of establishing that Aldrich and Kopelciw would have been likely to testify at separate trials, and that their testimony would have been exculpatory. *See Starr,* 584 F.2d at 238. Furthermore, even if the appellants had met this burden, the record indicates that any error would have been harmless. *See Lane,* 106 S.Ct. at 732. Any exculpatory testimony by Kopelciw and Aldrich would have been subject to impeachment by government witnesses Soseman, Brink, Putnam and Hart.

■ Aldrich and Kopelciw's assertion that they were prejudiced by the jury's inability to compartmentalize the evidence against them and Bittner is similarly without merit. In support of this claim, they argue only that the government's case contained a disproportionate amount of evidence against Bittner, the "kingpin" of the alleged conspiracy. This alone is not grounds for severance, *see Knife,* 592 F.2d at 480, and there is nothing in the record to indicate that the jury could not reasonably compartmentalize the evidence.

### B. Continuance.

Aldrich and Kopelciw argue that the district court erred in denying their motion for a continuance of the trial, made in chambers immediately prior to jury selection, on October 7, 1985, based on the unavailability of a potential witness, Gordon Hoch. They assert that they were only able to learn of Hoch's identity four days before trial, and he said he would be willing to testify, but was not available on the scheduled trial dates because of an important business engagement. They contend that Hoch's willingness to testify indicates that there is a strong probability that he would have been able to testify within a reasonable time from the scheduled date of trial, and his testimony would have shown that ASARCO's shortages of silver may have been due to the refining process rather than theft.

The district court must balance a number of considerations in determining whether or not to grant a continuance and must be afforded substantial discretion. *United States v. Coronel-Quintana,* 752 F.2d 1284, 1287 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985). Denial of a continuance is reversible error only if the judge clearly abused this discretion. *Id.* The district court must consider the following factors in deciding whether to grant a continuance:

1) the nature of the case and whether the parties have been allowed adequate timing for trial preparation;

2) the diligence of the party requesting the continuance;

3) the conduct of the opposing party and whether a lack of cooperation has contributed to the need for a continuance;

4) the effect of the continuance and whether a delay will seriously disadvantage either party;

5) the asserted need for the continuance, with weight to be given [to] sudden exigencies and unforeseen circumstances.

*Id.* at 1287–88 (citing *United States v. Little,* 567 F.2d 346, 348–49 (8th Cir.1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1978)).

■ The district court properly exercised its discretion in denying a continuance in the present case. The parties had ample time for trial preparation, in light of the fact that the trial was originally set to commence on May 20, 1985, and was first postponed to September 9, 1985, and then to October 7, 1985. Aldrich and Kopelciw offered no evidence that they exercised due diligence in identifying and locating Hoch during the five and one-half months they had to prepare for trial. Nor do they claim that the conduct of the government in any way contributed to their need for a continuance, or that any unforeseen circumstances or exigencies gave rise to their need for a continuance. *See Coronel-Quintana,* 752 F.2d at 1257; *cf. United States v. Barrett,* 703 F.2d 1076, 1081 (9th Cir.1983) (continuance for purpose of locating expert witness to attack government's expert improperly denied, where defendant was first notified of government's intent to call expert 8 days before trial, and received the results of the expert's tests 2 days before trial).

We hold that the district court did not err in denying a continuance. However, we note additionally that because the record is replete with testimony that dore was stolen from ASARCO, it is unlikely that Hoch's testimony would have altered the jury's verdict. *See Barrett,* 703 F.2d at 1082 (applying harmless error rule to denial of continuance).

### C. Sentencing.

■ Bittner argues his sentence of one year and one day is excessive and should be set aside. In light of the fact that he faced a maximum sentence of twenty years, *see* 18 U.S.C. §§ 371, 2313, 2314 (1982), this claim is without merit. *See e.g.,*

*United States v. Rosendich,* 729 F.2d 1512 (8th Cir.1984) (per curiam) ("A sentence is generally not subject to review unless it exceeds statutory limits, violates constitutional or procedural requirements, or reflects that the district court failed to exercise its discretion or manifestly or grossly abused its discretion.")

### III. CONCLUSION.

The district court's orders are affirmed.